O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD G. M., <br>     Plaintiff, <br> v. <br> ANDREW M. SAUL, Commissioner of Social Security, <br>     Defendant. | Case No. 5:19-cv-1961-KES <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## PROCEDURAL BACKGROUND

Plaintiff Richard G. M. ("Plaintiff") testified that he worked for approximately twenty-one years driving an 18-wheeler mail truck until having a motor vehicle accident in 2013, after which he was laid off because his employer's "insurance didn't want to okay [him] to drive anymore." Administrative Record ("AR") 41, 43-44. He filed an application for Social Security Disability Insurance Benefits alleging that he became disabled and unable to work on September 3, 2013, at age 62 due to "back injury." AR 134, 158.

On November 7, 2018, the Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel testified, along with a

vocational expert ("VE"). AR 29-57. On November 30, 2018, the ALJ issued an unfavorable decision. AR 14-24. At Step One of the sequential evaluation process, the ALJ found that Plaintiff's last date insured ("LDI") was March 31, 2017. AR 19. While Plaintiff had earnings in 2015, 2016, and 2017, the ALJ determined that those earnings did not rise to the level of substantial gainful activity. AR 19-20.

At Step Two, the ALJ found that through his LDI, Plaintiff had the following medically determinable impairments: "disorders of the back, diabetes mellitus, and hypertension." AR 20. The ALJ determined that none of these impairments were "severe," because they did not significantly limit his ability to perform basic work related activities over at least 12 months.[1] Id. (citing 20 C.F.R. § 404.1521 et seq). The ALJ based this determination on a review of medical evidence which included (1) a June 2016 opinion by consultative examiner Dr. Bernabe finding that Plaintiff had no functional limitations (AR 287-91); and (2) opinions by state agency consultants Drs. Lee and Haaland from June and August 2016 also finding that Plaintiff had no functional limitations (AR 63, 72). AR 23. The ALJ gave these opinions "great weight." Id. In contrast, the ALJ gave "little weight" to the March 2017 opinions of Dr. Bishara (who treated Plaintiff for "low back pain, diabetes and lower leg neuropathy" and opined Plaintiff had "difficulty ambulating" [AR 304]) as inconsistent with "examination findings throughout the period at issue indicat[ing] that the claimant ambulated

---

[1] Plaintiff argues that by finding he had no "severe" impairments, the ALJ found that Plaintiff "apparently has no limitations whatsoever in his ability to walk, stand, sit, lift, push, pull, reach, carry, or handle." (JS at 9.) This mischaracterizes the nature of Step Two findings. At Step Two, the ALJ must identify medically determinable impairments that "significantly limit" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. Of course, every human has limits on his/her exertional abilities, but often those limits are not caused by medically determinable impairments.

with a normal gait."  AR 23.

Based on his Step Two findings, the ALJ concluded that Plaintiff was not disabled.  AR 24.

## II.
## ISSUE PRESENTED

This appeal presents the sole issue of whether the ALJ's Step Two findings are supported by substantial evidence.  (Dkt. 18, Joint Stipulation ["JS"] at 3.)  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,]" and it must be based on the record as a whole.  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (as amended).  "'Substantial evidence' means 'more than a mere scintilla,' Richardson, 402 U.S. at 401 (citation omitted), but 'less than a preponderance.'"  Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576 (9th Cir. 1988) (citations omitted).

## III.
## SUMMARY OF THE MEDICAL EVIDENCE

A.   **Pre-LDI Records.**

On February 5, 2014, Plaintiff went to Arrowhead Regional Medical Center clinic ("Arrowhead") "to establish care."  AR 254.  He reported that he "is a truck driver and went for annual physical and was told that his blood pressure was very high."  Id.  He reported "no other medical problems" and was not taking any medications.  Id.  Since his blood pressure was not elevated at the clinic, he was instructed to "take blood pressure once daily and bring log to next visit."  Id.

He returned to the clinic on February 27, 2014, at which time he reported "having back pain for about 5 years that was intermittent."  AR 250.  After reviewing lab results, he was prescribed blood pressure medication and pain medication.  Id.  Arrowhead also ordered spinal diagnostic testing that showed "minimal degenerative changes."  AR 249.

At his May 2014 clinic visit, Arrowhead increased his blood pressure medication after reviewing his log. AR 247. Arrowhead also performed a physical examination, noting "lumbar spine range of motion is intact" and "gait is normal." Id. An assessment of his lower back pain had largely normal results, including a one-hour sitting limitation, and standing and walking "WNL [within normal limits]." AR 242.

By July 2014, his blood pressure was below 140/90 with no medication side effects. AR 245. He told Arrowhead that he "still continues to work[.]" Id. He was referred to physical therapy ("PT") to treat his back pain and instructed to return to the clinic "in 9 months or as needed." Id.

PT records from August 2014 indicate that Plaintiff could do squats and lunges. AR 244. The therapist "reviewed body mechanics for yard work, lifting" because "Pt mostly c/o [complains of] stiffness/pain ć [with] working in yard." AR 241, 244. The therapist also noted, "Pt may be starting new job next week @ shipping docks." AR 244.

In November 2014, Plaintiff requested a letter confirming that his hypertension was controlled with medication "to have his [truck driver's] license re-instated." AR 238. He reported that he was "under a lot of stress because he is not working. He really needs to find a job." Id. His assessment plan did not include any pain medication. Id.

In October 2015, he rated his pain as "0" and had "no new complaints." AR 230-31. He had "no Med x 6 months," and his hypertension was controlled with diet and exercise. AR 231-32.

In April 2016, Dr. Bishara prescribed a Lidoderm patch for low back pain. AR 259. Plaintiff told Dr. Bishara that he had "acute lumbar back pain … following a specific injury (car accident)."[2] AR 292. Dr. Bishara observed

---

[2] Plaintiff may have been referring to a serious car accident he had in

4

"normal gait and station[.]" AR 293. He assessed Plaintiff's pain as "mild." AR 294.

In June 2016, Plaintiff told Dr. Bernabe that he was not receiving treatment or medication for back pain. AR 287. Dr. Bernabe also observed a "normal" gait and blood pressure of 138/88. AR 288. Plaintiff had negative straight-leg raising tests and displayed a full range of motion in his lumbar spine. AR 289.

In July 2016, Plaintiff returned to Dr. Bishara who twice assessed a "normal" gait and "mild" pain. AR 296-97, 299-300. Dr. Bishara diagnosed Plaintiff as suffering from type 2 diabetes mellitus, but he identified no neurological abnormalities. AR 299-300.

In August 2016, Plaintiff, assisted by his wife, completed Function Reports. AR 186-202. He wrote, "My back injuries are intense in standing, sitting down, and walking … everything I do is for a short time. No lifting at all." AR 186. He needed to "rest to relieve pain by lying down on [his] back." AR 194. He could only walk 100 or 125 yards before needing to rest 20 or 25 minutes to resume walking. AR 191, 199. He was not on any medication. AR 193, 201.

In November 2016 (about two years before the November 2018 hearing), Plaintiff passed the physical required to renew his commercial driver's license. AR 35. He testified that he was "okay at the time" and "able to drive without any difficulties," but his condition kept getting worse. Id.

**B.    Post-LDI Records.**

In August 2017, Dr. Bishara assessed "normal" coordination and gait with "mild" pain. AR 364. He nevertheless referred Plaintiff to a neurologist to "R/O [rule out] Parkinsonism" due to a "shuffling gait." Id. His September 2017 examination has similar notations. AR 368. When asked about Parkinson's disease at the hearing, Plaintiff testified that his doctors "haven't followed that up,

---

1999. AR 44, 52.

5

it seems like, at this point." AR 48.

In October 2017, Plaintiff was hired by Swift Transportation Services and trained for two months for a cross-country truck driver position until he was laid off prior to completing the training. AR 37-38, 46.

By 2018, Plaintiff was treating with Dr. Kimberly Bekemeier. AR 307, 316. He was taking Tramadol for back pain as needed. AR 319, 321. In April 2018, he told Dr. Bekemeier that he had experienced back pain since a 1999 car accident and "weakness affect[ed] his ability to ambulate appropriately[;]" he reported frequent leg cramps and needing "to sit down often." AR 321. He also reported that he was "actively attempting to obtain social security/disability." Id. She, however, observed a "normal" gait and full strength in his lower extremities. Id. She assessed that his weakness and fatigue might be symptoms of depression caused by "recent loss of job, house, and parents." AR 321-22.

One month later in May 2018, Plaintiff displayed to Dr. Bekemeier a "slow shuffling gait." AR 326. He was prescribed medication to treat his depression, but he discontinued it when it made him feel "foggy." Id.

## IV.
## DISCUSSION

Plaintiff's brief does not specifically address what severe, medically determinable impairments he contends he had before his LDI. The Court therefore assumes that his arguments target the ALJ's findings that his hypertension, diabetes, and back disorders were not severe.

### A.   Hypertension.

Per the above-summarized medical records, Plaintiff's high blood pressure was first lowered with medication then controlled with diet and exercise. In the Joint Stipulation, Plaintiff does not present any evidence that this impairment

lasted for more than 12 months,[3] or that once controlled, it significantly limited his ability to do basic work activities.

**B.	Diabetes.**

Plaintiff cites three 2017 records indicating he suffers from diabetes. (JS at 5.) All three records from Dr. Bishara merely say, "complication of type 2 diabetes mellitus." AR 356, 359, 362. In each examination, Dr. Bishara observed "normal sensation, normal coordination" and "normal" gait. AR 357-58, 360-61, 364. While the last record (post-LDI) also mentions a "shuffling gait" and a referral to a neurologist to rule out Parkinson's disease, nothing in this record links Plaintiff's shuffling gait to diabetes. AR 364. These records, therefore, do not evidence any functional limitations caused by Plaintiff's diabetes pre-LDI.

Plaintiff also cites Dr. Bishara's March 2017 opinion letter stating that Plaintiff had difficulty ambulating due to lower extremity neuropathy caused by diabetes. (JS at 6 (citing AR 304).) The ALJ appropriately discounted this letter as inconsistent with the longitudinal medical record, including Dr. Bishara's own examination notes that consistently found Plaintiff's gait normal. AR 23.

Plaintiff testified that he was taking oral medication to manage his diabetes. AR 49. Plaintiff cites no evidence in his treating records that his diabetes was ever uncontrolled or caused functional limitations. Thus, Plaintiff fails to show error in the ALJ's finding that his diabetes was non-severe. See Warre v. Comm'r of SSA, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that medication can effectively control are not disabling).

//
//

---

[3] Plaintiff does argue that after experiencing high blood pressure in 2014, in October 2015 he was "noted to be suffering from hypertension[.]" (JS at 5 (citing AR 230).) The cited record, however, merely indicates that Plaintiff had a history of high blood pressure. AR 230. His blood pressure that day was 112/73. Id.

## C. Back Disorders.

First, Plaintiff argues that Dr. Bernabe's report is not substantial evidence, because he is "no longer utilized as a consultative examiner[.]" (JS at 4.) Defendant agrees that Dr. Bernabe was removed from the list of approved consultative physicians in March 2017, but argues that his removal does not invalidate all his earlier opinions. (JS at 13 n.2.) Multiple district court opinions have considered and rejected the argument that Dr. Bernabe's removal due to multiple allegations of medical malpractice render his opinions per se unreliable. See Luis C. v. Berryhill, No. 18-01091-GJS, 2019 WL 2027599 at *2, 2019 U.S. Dist. LEXIS 78004 at *4-6 (C.D. Cal. May 8, 2019) (collecting cases). Plaintiff fails to show that the ALJ erred by giving Dr. Bernabe's report great weight.

Next, Plaintiff argues that the ALJ failed to account for medical evidence showing that he has a shuffling gait. (JS at 6.) In fact, there are no pre-LDI records documenting that Plaintiff had a shuffling gait, let alone linking shuffling to a medically determinable back disorder.

Plaintiff then argues that Summer 2014 records showing that Plaintiff was referred to PT to address back pain establish that his back condition was "severe." (JS at 4-5.) Those PT records, however, indicate that while Plaintiff complained of "stiffness/pain" after doing yardwork, he was still looking for work at the "shipping docks" and obtaining documentation to renew his commercial driver's license. AR 238, 241, 244. Plaintiff's pain complaints did not last twelve months, since by November 2014, he was not taking pain medication (AR 238) and by October 2015, he rated his pain as "0" despite receiving no pain medication or other pain treatment for many months. AR 230-31.

Next, Plaintiff argues that "[w]eakness in his lower extremities were documented consistently in 2016" citing AR 292, 295, and 299-300. (JS at 9.) Dr. Bashara's April 2016 examination noted 4/5 strength for Plaintiff's iliopsoas (hip flexor) muscles bilaterally, but 5/5 strength for quadriceps and hamstrings with a

"normal" gait. AR 293. The examination also notes that while back pain is present, muscle weakness is not. AR 292. Dr. Bashara made similar findings in July 2016. AR 295, 298. Plaintiff does not present any evidence that degenerative changes to his back caused weakness in his iliopsoas muscles or that a 4/5 strength rating in one's iliopsoas muscles would significantly limit one's ability to do basic work activities. Indeed, in June 2016, Plaintiff was not receiving any treatment or medication for back pain. AR 287.

Plaintiff also points to imaging of his lumbosacral spine in July 2016 that showed osteoporosis (i.e., porous bones) and a "20% partial compression fracture of indeterminate age involving T12 and L1." (JS at 9 (citing AR 352).) No medical source attributed pain or any other symptom that might cause functional limitations to Plaintiff's osteoporosis. The "compression fracture of indeterminate age" also does not undermine the ALJ's Step Two findings, because it could have been present since Plaintiff's 1999 car accident, after which he still worked for many years.

Finally, Plaintiff argues that the ALJ "inappropriately disregarded … Plaintiff's own subjective reporting of his symptoms and limitations without providing significant or legitimate reasons for doing so." (JS at 9.) Not so. The ALJ explained that Plaintiff made statements about his extreme difficulty walking that were inconsistent with multiple doctors' observations of a "normal" gait. AR 22. The ALJ also found that Plaintiff's ability to pass the physical needed to renew his commercial driver's license in 2016 indicated "a much greater level of functioning" than he alleged. AR 22-23. Indeed, Plaintiff testified that he was "okay at the time[,]" although 2016 was three years after his alleged disability onset date. AR 35. These inconsistencies were legally sufficient reasons for the ALJ to "afford[] little weight" to Plaintiff's subjective symptom testimony. AR 23.

# V.
# CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner.

DATED: June 08, 2020

_Karen E. Scott_
KAREN E. SCOTT
United States Magistrate Judge